NARISI *v.* NARISI.

5-1672                                        320 S. W. 2d 757

Opinion delivered February 2, 1959.

[Rehearing denied March 9, 1959.]

*Heilbron & Shaw, Hardin, Barton, Hardin & Garner,* for appellant.

*Warner, Warner & Ragon, Bethell & Pearce,* for appellee.

PAUL WARD, Associate Justice. This is a divorce action involving the custody of children, support for the wife, and maintenance for the children.

Appellant, Norma J. Narisi, and appellee, Vincent J. Narisi, were married on December 16, 1947 at Fort Smith where they both lived at that time and where they still live. The parties lived together without incident until about the middle of September, 1954 when they separated for about 3 months. During the time they were together three children were born: Jacob J. Narisi, now about 9 years old; Stella Maria Narisi, about 7 years old, and; Vincent J. Narisi, Jr., about 5 years old.

The parties resumed marital relations about the middle of December, 1954 and continued to live together until May, 1955 when they again separated for about 6 weeks.

They resumed marital relations about the middle of July, 1955 and lived together until their final separation on May 30, 1957.

On July 27, 1957, Norma filed suit for divorce on the grounds of indignities, including unmerited reproach, physical abuse, abusive language, and non-support of her and the children. She prayed for a divorce, for custody of the children with visitation rights to appellee, for $600 per month for support and maintenance, for one-third of appellee's personal property absolutely, for one-third of all real property for life, and for attorney fees.

On August 5, 1957 Vincent filed a general denial and also a cross-complaint accusing Norma with indignities, including abuse, studied neglect, physical abuse, and profane language, and stating that Norma was not a fit person to have custody of the children. His prayer was for a divorce and custody of the children.

Upon a final hearing the trial court denied a divorce to Norma, gave a divorce to Vincent and gave custody of the children to Norma. The trial court also made allowances for support and maintenance.

On this appeal appellant, among other things, asks us to hold that she is entitled to a divorce, and that appellee is not, and that she be given the statutory division of property. She also asks for additional support and maintenance, and additional attorney fees.

On the principal question of divorce we have reached the conclusion that neither party should be given a divorce. In view of this and in the hope, perhaps vain, of a reconciliation in the interest of the children, we will not attempt to recount and evaluate in detail all of the testimony which is voluminous, sometimes sordid and highly conflicting. We feel that to set out fully the testimony would not be beneficial as a precedent and might only serve to aggravate a delicate situation.

A careful examination of the record presents us with this general picture:

When the parties were married appellant, who was several years younger than her husband, was working for appellee, who was and is a substantial business man in Ft. Smith, and she continued to work in a clerical capacity until after the first child was born. Apparently marital clouds first began to gather in the fall of 1953 over money matters and over Norma taking dancing lessons. Appellee did not, and has never, given a definite allowance to appellant. Sometimes her demands for money were not granted by appellee and sometimes, it seems, they should not have been. Appellant says she borrowed money and also used money from her own small estate to pay the expenses incidental to the birth

of the children. This was denied. At first appellee went with appellant to take dancing lessons, but later she chose to go by herself under circumstances which led appellee to think, right or wrong, that she was enamored with the dancing teacher. Anyway after living together for about six and one-half years the first separation took place and lasted for about 3 months. During this period of separation the parties were together on a few occasions but it was also when appellee thought Norma strayed further from the path of rectitude. Her association with the dancing teacher aroused intense distrust in appellee. He and his private investigators professed to have found appellant and the dancing teacher in suspicious relationships, but there was no positive or direct proof of extreme indiscretions. It is undisputed that Vincent accused her repeatedly of acts of infidelity with more than one man. In spite of it all they went back together on or about December 15, 1954 and lived together in their home for about 5 months when they separated once more for a period of about six weeks. The immediate cause of this separation, in addition to some of the things mentioned above, was a fight in which, according to appellee, Norma tried to inflict injury on him with a pair of scissors.

We pass over the intervening accusations and counter accusations because the parties again effected a reconciliation on or about July 15, 1955 and lived together until May 30, 1957.

Regardless of the merits or demerits of each party's accusations prior to the July, 1955 reconciliation, we think each party condoned the actions of the other on that date and by that act. Our holdings to that effect are so numerous and specific that citations are unnecessary. We realize that condonation may sometimes be conditional, but we do not think that rule is applicable here. In the first place living together nearly two years belies any expressed or latent intent to cohabit on a trial basis, or if so, it shows that the trial period had ended. Also, the cause of the last separation was not a renewal of the alleged prior indiscretions and indignities.

The immediate cause of the final separation was a brawl that took place in their home on the night of May 30, 1957. The parties and their children, together with two visiting children, had visited a rodeo that night. When they returned around 10 or 11 o'clock after the children had gone to bed, Norma and Vincent went to their room where they were to sleep on a double bed. Shortly the brawl began. Their stories of the cause and what happened are somewhat similar, but vary as to who was most to blame. Appellant, according to her account, turned on the bed light to read for a few minutes when appellee got mad, cursed her, and dragged her bodily into the living room. She says she resisted only because she didn't want to awaken the children and make a scene. Appellee admits asking appellant twice to turn out the light so he could sleep, and that she not only refused but flew into a rage with violent language, and tried to inflict bodily harm on him. He says that he was merely trying to defend himself when he took hold of her arms until he could get to the front door and escape. It is impossible to determine with satisfaction which party has given the true account of what took place, and there is no corroborating evidence to tip the scale.

There is, however, one thing that is made clear in the record, and that is that both parties were equally at fault. Such being the state of the record we conclude that neither party should be given a divorce. In this connection, we like the general rule as stated in 27 C. J. S. at page 623, dealing with *Divorce,* under the section of *Recrimination,* Section 67a. which states: "As a general rule, sometimes declared by statute, divorce is a remedy for the innocent against the guilty; hence, if both parties are equally at fault, a divorce will not be granted. If the conduct of both parties has been such as to furnish grounds for divorce, neither of the parties is entitled to relief, or, as the rule sometimes is expressed, if both parties have a right to a divorce, neither of the parties has." Decisions from many states are cited in support of the above. The rule is known as the doctrine of recrimination and rests on the equitable maxim that he who

comes into equity must come with clean hands. There are decisions of this court in harmony with the rule expressed above. In *Cate* v. *Cate,* 53 Ark. 484, 14 S. W. 675, where a divorce was denied both parties we said: "It is not necessary to recapitulate the evidence and determine whether the conduct of either would be sufficient to warrant a divorce, provided the other was less guilty. It is immaterial, for we find them about equally at fault . . ." For holdings to the same effect see: *Malone* v. *Malone,* 76 Ark. 28, 88 S. W. 840; *Strickland* v. *Strickland,* 80 Ark. 451, 97 S. W. 659; *Wilson* v. *Wilson,* 128 Ark. 110, 193 S. W. 504; *Preas* v. *Preas,* 188 Ark. 854, 67 S. W. 2d 1013; *Evans* v. *Evans,* 219 Ark. 325, 241 S. W. 2d 713; *Woodcock* v. *Woodcock,* 202 Ark. 809, 152 S. W. 2d 1013; and; *Bonner* v. *Bonner,* 204 Ark. 1006, 166 S. W. 2d 254.

In disposing of the case below the trial court made we believe a fair allowance for the support of appellant and the care of the children which we hereby approve. We also approve the action of the trial court in giving to appellant the custody of the children, together with the visitation arrangement set forth.

Several other orders and actions of the trial court are urged as error by appellant, but in view of the disposition we have made of the case, as set forth previously, we deem it necessary to refer to only one.

Appellant earnestly insists that the trial judge should have disqualified and that it was error for him to refuse to do so. This contention is based on the showing that the trial judge had formerly been somewhat closely associated with appellee, both socially and in a business way. We point out that no showing was made which would disqualify the trial judge under any statute or under the constitution of this state. Such matters of disqualification are, as we have said many times, left largely to the discretion of the trial judge himself. We cannot say that the trial judge abused his discretion in this instance.

Appellant has asked for an additional attorney fee for prosecuting this appeal, and we think she is entitled

thereto in the amount of $200 to be paid by appellee, and it is so ordered.

The decree of the trial court is therefore affirmed in all matters except that portion granting a divorce to appellee, and that part is reversed. The cause is remanded with directions to enter a decree in accordance with this opinion.