## Steven BURROWS *v.* CITY OF FORREST CITY

CR 76-110                                   543 S.W. 2d 488

Opinion delivered November 29, 1976
(In Banc)

*Sharpe & Morledge, P.A.,* for appellant.

*Kinney & Easley,* by: *B. Michael Easley,* for appellee.

J. FRED JONES, Justice. The appellant Steven Burrows was convicted in municipal court for the misdemeanor possession of marijuana. He was fined $250 and sentenced to ten days in jail. Upon appeal to the circuit court he was, on February 27, 1975, fined $250 and sentenced to one year in the county jail but the jail sentence was suspended during good behavior. This is an appeal by Burrows from a circuit court judgment revoking the suspension of the sentence, and the precise and only question on appeal is whether the trial

judge abused his discretion in refusing to recuse himself from hearing and passing on the motion to revoke.

On July 22, 1975, the appellant was arrested on a traffic violation for making an improper "U-turn." The arrest was not without additional incident and resulted in municipal court fines of $5.00 for the traffic violation; $25 for disturbing the peace; $500 with six months in the county jail for assaulting an officer; $500 and six months for obstructing justice, and $25 on additional charge of disturbing the peace at the police station. The appellant appealed to the circuit court and while the cases were pending in circuit court on appeal, the city filed a motion to revoke suspension of the sentence previously imposed on marijuana conviction. The motion to revoke was based upon the municipal court convictions growing out of the traffic incident.

On November 6, 1975, the appellant filed a motion for continuance of a hearing on the motion for revocation of suspended sentence on the ground that the municipal court convictions upon which the motion to revoke was based, were still pending before the circuit court on appeal. The appellant also filed a motion to quash the jury panel for trial of the appeal cases because it was not representative of the appellant's age group.

An unfortunate situation developed between the very reputable attorneys representing the appellant and the very competent and conscientious trial judge during their discussions of the motions. The trial judge apparently considered the motions dilatory in an effort to extend the hearing on motion to revoke beyond the one year suspended sentence but, apparently in the light of *Parkerson v. State,* 230 Ark. 118, 321 S.W. 2d 207 (1959), the trial court did extend the hearing from November 12 as originally set, to November 18, 1975. This new date as extended was well within the one year suspended sentence, but prior to a possible trial date for the municipal convictions on appeal.

In the meantime, apparently chafing under the trial court's accusations of dilatory tactics, the attorneys for the appellant concluded from their conversations with the trial judge, that he had already concluded before hearing, that the

suspension would be revoked; so, on November 13, 1975, the appellant filed a motion for the trial judge to recuse himself from hearing on the motion for revocation on the ground that the judge had told one of the attorneys of record to tell the appellant "to bring his toothbrush with him," and had made other statements indicating bias and prejudice against the appellant. In response to the motion to recuse, the appellee-city contended that the full statement of the circuit judge was "that Defendant should bring his toothbrush with him because if he is found guilty, he is going straight to jail," and that the statement was made to one of the attorneys for the appellant but was not made in a professional capacity, as affecting the rights of the defendant. The trial judge refused to recuse himself and on November 18, 1975, hearing was had on the motion to revoke. Following the hearing at which the peace officers and also the appellant testified, the suspension was revoked and the appellant was sentenced to serve the remaining 99 days of his original one year sentence in the county jail.

On appeal to this court the appellant contends that the trial court erred in denying his motion for the judge to recuse himself.

The record on the motion to recuse was made at a hearing on November 6. At that hearing both attorneys for the appellant and the attorney for the appellee-city testified. The record as to attorney Sharpe's testimony, in pertinent part, appears as follows:

> I talked with Judge Hargraves about an hour about this matter [date for hearing], and tried to explain to him the prior commitments that both Mr. Morledge and I had, and on one or more occasions Judge Hargraves told me that the motion to strike the Jury Panel and that the the motion for the continuance on the hearing set for the motion for revocation of the suspended sentence were dilatory pleas, and that if said motions were granted it would be impossible to empanel the jury or set a date for the hearing on motion of revocation of the suspended sentence prior to a date subsequent to the expiration of the suspension, that being February 24, 1976, inasmuch as Steven Burrows secured a one-year suspended sentence that was pronounced on February 24, 1975.

Judge Hargraves told me, I told Judge Hargraves that Attorney Knox Kinney had stated to me that the law was that the date of the filing of the revocation was applicable. He told me that in the car coming from the Rotary Club, and I had not had a chance to check it out.

Judge Hargraves told me if that was the law that he would grant the continuance for the motion, that he would grant the continuance on the motion for the continuance relating to the motion for the revocation of suspended sentence. However, Judge Hargraves told me—

THE COURT: Until the following week.
* * *

In an effort to show the Judge further that there was no reason to press forward at this particular term, or at this particular date, the next day I tried to explain to him that the case or cases, five cases against Steven Burrows that were on appeal, had their inception with an alleged violation of making a U-turn on Highway 1 in Forrest City, and that maybe the officers had used a little bit too much force.

Judge Hargraves told me that we would not try the officer, that Steven Burrows was on trial, that the officer was not on trial, the arresting officer, and that the arresting officer did what he was supposed to do according to the books, pointing to a set of Arkansas Supreme Court cases in Judge Hargraves' office.

In addition, Judge Hargraves told me that when Steven Burrows received his suspended sentence of one year on February 24, 1975, that Steven Burrows had made a contract with the Judge, and that Judge Hargraves was going to see that the contract was carried out on the part of Steven Burrows.

After about an hour conversation, unable to agree on a date of continuance, Judge Hargraves suggested that I contact Judge John Anderson, he was not trying any cases at all during this week, and mind you, all of the conversation that I had had with Judge Hargraves

related to the continuance on the motion for the revocation of suspended sentence.

*   *   *

A few minutes after I got to my office Judge Hargraves called me and stated that, to be sure that there would be no misunderstanding, that the only thing that Judge Anderson would hear, if I were able to secure him during the week of the 17th, would be the five appeal cases, that he, Judge Hargraves, was going to hear the motion for revocation the next day, Wednesday morning, November 14, and during that conversation on the telephone Judge Hargraves again questioned our motives as attorneys for Steven Burrows in filing motions to strike the Jury Panel, and our motion for a continuance on the hearing of motion for revocation.

*   *   *

A quick examination of the authorities reflected that the Supreme Court of Arkansas, in *Parkerson v. State,* 230 Ark. 118, 231 S.W. 2d 207 had held that a petition to revoke a suspended sentence prior to the end of the suspension gave the Court jurisdiction to revoke a suspended sentence, and jurisdiction was not lost when the Court, on defendant's motion for a continuance, passed the matter until the date subsequent to the expiration of the sentence.

I immediately dictated a written motion for continuance, relating to the motion for revocation, because Judge Hargraves had told me that if this was the law, or if I would agree that this was the law, that he would continue the case.

THE COURT: Until the following week.

*   *   *

After analyzing the conversation that had taken place between Judge Hargraves and myself, and his statement made on three or four occasions about the ulterior motives in filing motion to strike the Jury Panel, and continuance, to deprive this Court of jurisdiction, the fact that he had pointed to the books and said that the officer did what he was supposed to do, the fact that I

would not be able to try the officer, the other matters set forth in the motion for continuance, I felt as though Judge Hargraves had made his decision in the matter prior to hearing any evidence, and for that reason my partner and I filed a motion asking the Judge to recuse himself in this case. I was not present. I was not present on or about November 6 when the original motion for continuance of the revocation was filed, or matters set forth in the motion for the Judge to recuse himself pertaining to that, and since I was not present I believe Mr. Morledge ought to testify to that.

Mr. Morledge, the appellant's co-counsel, testified that he and attorney Sharpe prepared a motion to strike the jury panel in the trial of the cases pending against the appellant on appeal, and that they presented the motion to the trial judge in chambers. The pertinent portion of the record pertaining to attorney Morledge's testimony then appears as follows:

On my delivering the motion [to strike the jury panel] to the Court Judge Hargraves said that I was to bring our client, Mr. Burrows, to court on November 12, 1975, and that he was to bring his toothbrush with him at that time.
*  *  *

I remember specifically that I raised some question with the Court at that time about statements as to whether both the motion for revocation and the trial on the five appeals on misdemeanor cases would be held at the same time. The Court stated that that was not the case, that it may take some two to four days to get to the motion to strike the Jury Panel, and that I should, or we, Mr. Sharpe and I, have our client in Court on the 12th and have him bring his toothbrush with him.

Mr. Easley, the attorney for the appellee-city, testified in part as follows:

. . . I was present at the time Mr. Morledge has just alluded to with reference to the statement by the Court that the defendant should bring his toothbrush. I, too,

well remember the statement, but I think that there is more than one inference that may be drawn from that, and it seems to me that the inference which could logically be drawn was that, reading between the lines, the Court had once been lenient to Steven Burrows, and that in the event he was found guilty on this particular occasion, that he would go to jail rather than be granted any further leniency.

Now, granted, I don't recall any direct quote on this point. I cannot say what the exact words of the Court were, but I'm telling the Court what my interpretation of that statement was, and I think that the statement is not necessarily and for all purposes indicative of any prejudicial feeling or bias of the Court towards this individual. In fact, I have not at any time during the course of these proceedings seen any indication of any personal bias or prejudice on the part of Judge Hargraves against this individual.

I have, on the other hand, witnesses that this Court has shown a determination that its orders be carried out.

I have noted that Judge Hargraves, in handing down his suspended sentence, and then telling Steven Burrows what was expected of him on February 14, 1975, has shown a determination that people who are given chances, and who breach that trust, and that contract that is made, not only with the Court but what the Jury, can expect to have their sentence revoked, and may not expect the leniency and may not expect to hit the streets again, in common language.

We deem it a matter of common courtesy and accommodation for a trial judge to consider the convenience of attorneys in setting cases for trial and motions for hearing, but when an attorney and the trial judge cannot agree on a mutually convenient date, the convenience of the attorney must give way to the convenience of the trial court in setting a trial or hearing docket. The fact that the trial judge in the case at bar participated in "about an hour conversation" in attempting "to agree on a date of continuance," in our opinion, negates evidence of arbitrariness on the part of the trial judge in setting the matter for hearing.

We conclude, however, that the judgment must be reversed because of the trial court's request that the attorneys have the appellant bring his toothbrush with him when he appeared for the hearing on the petition to revoke the suspended sentence, when this remark is considered together with the other remarks made. The city attorney agreed with the appellant's attorney that the toothbrush remark was made by the trial judge, and the attorneys only differed in their interpretation of what the trial judge meant by the remark. When the remark concerning the toothbrush is considered together with the remakrs relating to the police officers having done what they were supposed to do, and the enforcement of a contract between the judge and the appellant, it is apparent that the remarks could be interpreted to mean that the trial judge's impartiality in the exercise of his judicial discretion was impaired.

Of course, a suspended sentence and also its revocation lie within the sound discretion of the trial court, Ark. Stat. Ann. §§ 43-2314 and 43-2326 (Repl. 1964). *Gross* v. *State,* 240 Ark. 926, 403 S.W. 2d 75. In *Gerard* v. *State,* 235 Ark. 1015, 363 S.W. 2d 916, a suspended sentence was revoked on ample testimony in support of the motion to revoke, but we reversed because the trial court refused to hear testimony offered in behalf of the accused and refused to hear the accused's own statement.

In the case at bar the testimony of police officers in support of the city's motion to revoke and also the appellant's own testimony were heard by the trial court, but we are not concerned on this appeal with whether the trial court abused its discretion in revoking the suspended sentence. We are concerned here with whether the trial judge should have recused himself under the circumstances in this case and we are of the opinion that he should have done so.

Certainly we are of the opinion the trial judge did not consider himself prejudiced or biased against the appellant in this case because we are convinced that if he had felt he was prejudiced or biased, he would have recused himself even without a motion that he do so. We think the language we employed in the civil case of *Farley* v. *Jester,* 257 Ark. 686, 520 S.W. 2d 200 (1975), is applicable to the case at bar. In *Farley*

we said:

> We think under all the circumstances, the chancellor should have disqualified himself to hear this case. In so finding, we do not mean to say, nor even to imply, that the chancellor had preconceived ideas or that his friendship with the Reverend Park prejudiced his findings. To the contrary, we consider this chancellor a capable jurist and a man of integrity, a reputation that he bears over the state. * * *

> However, court proceedings must not only be fair and impartial — they must also appear to be fair and impartial. This factor is mentioned in a Comment found in 71 Michigan Law Review 538, entitled "Disqualification for Interest of Lower Federal Court Judges," 28 U.S.C. § 455.

Since the trial judge's remarks in the case at bar could be considered subject to more than one interpretation, we feel the better procedure, where the trial judge sits as a fact finder, would be to resolve the difference in favor of the appearance of fairness and remand this case for hearing on appellee's motion to revoke before a different judge. See *Gerard v. State, supra.*

Reversed and remanded.