ARKANSAS LOUISIANA GAS COMPANY, Tom HAWKINS and Kent BACHELOR *v.* D.M. "Good" HUTCHERSON, Vernie GILES, Leon MOORE, and R.M. TUCKER, et al.

85-123                                                      697 S.W.2d 907

Supreme Court of Arkansas
Opinion delivered October 28, 1985

248

*Laws & Swain, P.A.*, by: *Ike Allen Laws, Jr.* and *Timothy W. Murdoch*; and *Gardner, Gardner & Hardin*, by: *Richard E. Gardner, Jr.*, for appellants.

*Luther B. "Lu" Hardin*, for appellees.

DAVID NEWBERN, Justice. ■ The appellees have obtained judgments for deceit against appellants Hawkins and Bachelor and a judgment for breach of contract against appellant Arkansas Louisiana Gas Co. (Arkla). The allegations of the appellees were that Hawkins and Bachelor misrepresented the obligations the appellees would incur if they agreed to participate in formation of an improvement district to obtain gas service. They alleged that Arkla breached its contract with respect to installation of the gas lines. The appellants complain about inconsistency and, by implication, excessiveness of the verdicts. However they cite no authority and make no convincing argument in support of those points, and thus we decline to review them. *Gray v. Ragland*, 277 Ark. 232, 640 S.W.2d 788 (1982); *Dixon v. State*, 260 Ark. 857, 545 S.W.2d 606 (1977). The sole question presented to us is whether the evidence was sufficient to support the jury verdicts on which the judgments were based. We hold the evidence was sufficient as to the misrepresentation verdicts but that it was not sufficient on the breach of contract claim. Thus we affirm in part and reverse and dismiss in part.

■ When insufficiency of the evidence is the issue presented on appeal, we view the evidence most favorably to the appellee and affirm if there is any substantial evidence to support the verdict and judgment. *Circle Realty Co.* v. *Gottlieb*, 267 Ark. 160, 589 S.W.2d 574 (1979); *Swink & Co., Inc.* v. *Carroll McEntee & McGinley*, 266 Ark. 279, 584 S.W.2d 393 (1979). Although we have been invited to do so by the appellants, we will not determine the "preponderance" of the evidence when the appeal is from a judgment based on a jury verdict. *Industrial Park Businessmen's Club, Inc.* v. *Buck*, 252 Ark. 513, 479 S.W.2d 842 (1972).

## 1. Misrepresentation

■ Hawkins and Bachelor circulated petitions for creation of a gas service improvement district among residents of the area to be served by the proposed district. Some of the appellees testified that Hawkins and Bachelor told them the taxes or assessments which they would be required to pay to support retirement of the new district's bonds would be substantially less than they ultimately had to pay. For example, appellee Hutcherson testified that Hawkins came to him to solicit his support and told him his tax would be $60.00 a year for eight or ten years until the bonds were paid off. Instead, under the district's formula, his improvement district tax was $514.00 per year. For another example, Steve Downum testified that Bachelor came to him and said he would not have to pay anything to be in the district if he did not use the gas because it would be paid for by those who used the service. Downum testified his improvement district tax is $50.00 per year. Hawkins and Bachelor were two of the initial commissioners of the improvement district, and there was unrebutted testimony that Hawkins' wife owned 50 percent of a company called Ark Vision which contracted with Arkla to install the gas lines. Under these circumstances we have no hesitancy in saying that there was substantial evidence to show the presence of each of the elements of fraud. *See Storthz* v. *Commercial National Bank*, 276 Ark. 10, 631 S.W.2d 613 (1982). First, there was testimony that the representations exemplified above proved false. Second, there was testimony from which the jurors could reasonably have inferred that Hawkins and Bachelor knew that the bond retirement proposal would require landowners in the district to pay annually $50 per home and the first acre and $2.50

per additional acre until the bonds were retired. Third, there is no dispute that Hawkins and Bachelor were attempting to induce participation so as to bring the district into existence. Fourth, there was direct testimony on reliance on the misrepresentations. Fifth, there was evidence of damages in that some appellees testified they are getting no benefit from the district and are paying far more for it than they had been led to believe they would be required to pay. Thus there was substantial evidence to support the misrepresentation verdicts.

Nothing in this part of this opinion should be construed as holding that improvement district commissioners must be able to give exact information on unknown or as yet undetermined costs to prospective participants. The point here is that the evidence supports the conclusion that these commissioners knew or had every reason to know precisely what the annual assessments would be and misrepresented those figures to the appellees.

## 2. Breach of Contract

When it was formed, the district entered an agreement with Arkla to lay the gas lines. The contract called for the district to pay Arkla $185,610 to install the gas lines. Attached to and incorporated by reference in the contract was an "Exhibit A," also identified as "Schedule A," a scale drawing which showed where the lines were to be placed. It called for laying some 90,000 linear feet of gas lines.

The appellees cite the testimony of two witnesses as being sufficient to support their contention that there was shortage in the pipe laid by Arkla. The first of these is Earl Yeargan who calculated that Arkla had, at most, laid 86,000 feet of lines in the district. During his testimony Mr. Yeargan referred to a copy of "Exhibit A" which later in the trial was demonstrated to have been incorrect. His calculations were based on this incorrect exhibit combined with measurements taken by him personally. On oral argument before this court appellees' counsel conceded that the copy of "Exhibit A" to which Yeargan referred was incorrect. We cannot tell, nor could a reasonable juror have told, from the complete transcript of Yeargan's testimony the extent to which his calculations were invalidated by the concededly incorrect datum on which they were based, thus we cannot find his testimony to have been substantial evidence of a shortage.

The other witness was Danny Adams, an Arkla employee. During his testimony he referred to a map he had prepared showing the lines placed by Arkla in the district. He testified he had measured the pipe when it was still exposed and then had drawn it on the map. He said that Arkla did not put pipes in all of the places required by the authentic "Schedule A" but that the changes were requested by the commissioners of the district and that Arkla eventually laid 91,995 feet of new line in the project. His testimony was that "Schedule A" called for 89,760 feet and that Arkla put in 79,335 feet of line in the places called for in "Schedule A" and the remainder of the 91,995 feet was placed in accordance with the agreed changes.

The appellees' brief refers us only to Adam's testimony on re-cross examination where he says Arkla put in 79,335 feet of line called for by "Schedule A" and would have us ignore the remainder of his testimony. We cannot do that, and no reasonable juror should have done so.

The essence of the appellees' claim is that Arkla shorted the district in the amount of pipe it laid. There is no substantial evidence supporting that conclusion, therefore the judgment against Arkla is reversed and this claim is dismissed.

Affirmed in part; reversed and dismissed in part.

PURTLE, J., not participating.