Helen Elizabeth SLOSS et al. *v.* FARMERS BANK
AND TRUST CO.

86-83                                              719 S.W.2d 273

Supreme Court of Arkansas
Opinion delivered November 10, 1986
[Supplemental Opinion on Denial of Motion to Reconsider
Dismissal of Petition for Rehearing January 26, 1987.]

*Guy H. "Mutt" Jones, Sr., Phil Stratton,* and *Casey Jones,* by: *Phil Stratton,* for appellant.

*Fendler, Gibson & Bearden,* for appellee.

DAVID NEWBERN, Justice. This appeal is from the probate court's order awarding fees to the appellee, Farmers Bank and Trust Co., and its attorneys. The fees were for work by the bank and the attorneys during a fourteen-month period when the bank was serving as administrator in succession of the estate of Elizabeth Bowden. The appellants are beneficiaries named in Elizabeth Bowden's will. The court once held the will was invalid, but that decision was reversed fourteen months later. *Reddoch* v. *Blair,* 285 Ark. 446, 688 S.W.2d 286 (1985). For that fourteen-month interim during which the bank was administrator of the estate, the court has awarded it a fee of $17,500 and its attorneys a fee of $22,500 plus $3000 for representing the estate in the appeal mentioned above.

The appellants urge five points on appeal: (1) that the probate judge should have recused himself; (2) that the court should have deferred consideration of the fees until distribution of the assets; (3) that the fee awarded the bank was excessive; (4) that the fees to the attorneys were excessive; and (5) that the appellants' notice of appeal and brief in this court are defective.

We find no merit in any but the third point, thus we affirm the award to the attorneys and modify the award to the bank.

## 1. Recusal

The appellants contend there is a debilitating appearance of impropriety in this case because when the earlier appeal was orally argued to this court, the probate judge's court reporter was at counsel table with the bank's attorneys.

The appellants argue that Canon of Judicial Ethics 3.C(1) required the judge to recuse himself because the act of his court reporter had put him in a position where his impartiality might reasonably be questioned.

We find the appellants made no showing that this act on the part of the court reporter made it reasonable to question the impartiality of the judge. If a violation of Canon 3.C(1) occurred, it was a vicarious one at best. No testimony or other evidence of partiality on the part of the judge was abstracted. The appellants cite our decision in *Narisi* v. *Narisi*, 229 Ark. 1059, 320 S.W.2d 757 (1959), where we concluded that the matter of disqualification is one largely left to the discretion of the trial judge. We repeated that conclusion in *Matthews* v. *Rodgers*, 279 Ark. 328, 651 S.W.2d 453 (1983), where we noted the appearance of impartiality requirement by the Canon. There the trial judge had been accused by one of the parties of several acts of partiality, the most serious of which was inviting an attorney for one side in the case to be a pallbearer at the judge's father's funeral eight days after the decision had been reached in the case and just two days before the decision was announced to the parties. Citing three recent cases in which we had held a judge should have disqualified himself, *Jordan* v. *State*, 274 Ark. 572, 626 S.W.2d 947 (1982); *Bolden* v. *State*, 262 Ark. 718, 561 S.W.2d 281 (1978); and *Farley* v. *Jester*, 257 Ark. 686, 520 S.W.2d 200 (1975), we held that for us to reverse on this ground we would have to find evidence that the trial judge was biased and that he communicated that bias to the litigants. Nothing in the appellants' abstract or argument leads us to any such conclusion.

## 2. Failure to defer

When Ms. Bowden's will was admitted to probate, Joe Martin was named executor. He and the attorneys representing him were paid fees for their efforts expended prior to the will being declared invalid by the probate court. When this court reversed that decision, Mr. Martin was reinstated as executor. He and his attorneys presumably will be entitled to further fees as the estate is wound up. The appellants urge that this situation and the magnitude of the fees ultimately to be awarded require that fees to the bank and its attorneys be deferred until the estate is distributed.

The appellants have cited no authority for this contention and we know of none. The argument gives us pause because the tortured path this estate has followed will probably result in more fees to personal representatives and attorneys and accountants than would have been ordered had the going been smooth. However, we cannot say the argument of the appellants is convincing. The earned entitlements of the bank and its attorneys can be calculated now, and they will be no different when the estate is distributed.

■ In the absence of citation of authority or convincing argument we need not consider this point further. *Arkansas Louisiana Gas Co.* v. *Hutcherson*, 287 Ark. 247, 697 S.W.2d 907 (1985); *Gray* v. *Ragland*, 277 Ark. 232, 640 S.W.2d 788 (1982).

## 3. The bank's fee

■ The probate code provisions on granting a fee to a personal representative are found in Ark. Stat. Ann. § 62-2208 (Supp. 1985). They are:

> a. COMPENSATION OF PERSONAL REPRESEN-TATIVE. The personal representative shall be allowed such compensation for his services when and as earned, as the court shall deem just and reasonable, not to exceed, except as provided in subsection b hereof, ten percent (10%) of the first one thousand dollars ($1,000), and five percent (5%) of the next four thousand dollars ($4,000), and three percent (3%) of the balance of the value of the personal property passing through the hands of the personal representative, provided that compensation shall be

allowed only on the value of such property as shall have been fully administered.

b. COMPENSATION FOR SPECIAL SERVICES. When the personal representative has performed substantial duties with respect to or on account of real property of the decedent, the court may, in addition to other compensation provided by this Code, allow a reasonable compensation for such services, the amount thereof to be fixed by the court, taking into consideration the nature and extent of the services, the extent and value of the real property and other relevant circumstances. The burden of the payment of such additional compensation shall be borne in accordance with applicable provisions of the will, if any, otherwise by the distributees or beneficiaries of the estate whom the court finds to have been benefited by such services, in accordance with the principles of equity.

The statute makes it clear that the probate court may award a fee, in excess of the listed percentages, for "substantial duties with respect to or on account of real property of the decedent." In deciding the bank was entitled to extra fees on that basis, the court recited:

First, as to the bank, we all acknowledge that the bulk of this Estate is the real property, valued at $1,384,200.00 in the Supplemental Accounting. That value of course is not included in the total when computing the fee of a personal representative under Ark. Stat. 66-2208. Excluding the real property, the statutory fee, without other considerations, would amount to just over $5,000.00. In this case, to exclude the real property totally from consideration would be most inequitable. There was a substantial farming operation, albeit leased out, the decedent's residence and other improvements that had to be cared for and managed, and a good portion of the time and efforts put forth by the bank was in relation to the realty. I am of the opinion that the bank, as Successor Administrator, is entitled to a fee in the total amount of $17,500.00 for its services in the case.

While we could agree with the trial court if he had recited or alluded to a list of services performed, we cannot find any evidence of such "substantial services" having been performed by

the bank. While the value of the real estate is impressive, according to the statute it is only in connection with finding that the personal representative has performed the substantial services that its value becomes relevant. The evidence showed that the land was already leased when the bank took over as administrator. The tax work was being performed by accountants and attorneys, and the initial return had been filed by the bank's predecessor. All the bank did, according to Mr. Harmon, its trust officer in charge of the account, was collect rents and make disbursements. There is no evidence that the bank and its officer made any discretionary or time-consuming judgments with respect to the management of the real estate. Mr. Harmon's records showed he had spent 129.9 hours on the estate over the fourteen months. He estimated another 14.3 hours. Much of this approximately 145 hours about which Mr. Harmon testified was spent conferring with lawyers and accountants, although he did arrange for insurance on estate property and make some trips, for example, to have the alarm system on the main house repaired and to intercede in the sale of a cotton gin.

Mr. Harmon wrote some 156 checks on behalf of the estate, but there is no showing as to what percentage of them related to managing real estate or paying bills or other obligations of the decedent.

Our calculation of the statutory fee, assuming as the parties apparently agree that the personalty in the estate was valued at $100,000, is as follows:

| | | |
|---|---|---|
| 10% x $ 1,000 | = | $ 100 |
| 5% x 4,000 | = | 200 |
| 3% x 95,000 | = | 2,850 |
| | | $3,150 |

We do not know how the trial court arrived at this figure of "just over $5,000" as the statutory fee. However, we are willing to give him and the bank the benefit of some knowledge we may not have. We cannot find evidence justifying the award of $17,500, and thus we reduce the fee to $5,000. *See Saad* v. *Arkansas Trust Co.*, 225 Ark. 33, 280 S.W.2d 894 (1955) (opinion on rehearing 225 Ark. 37, 280 S.W.2d 897.)

### 4. The lawyers' fee

The fee to the lawyers and the amount of work the evidence showed they performed stands in stark contrast to the fee awarded the bank and the work done by it. The firm of Fendler, Gibson and Bearden represented the bank during the fourteen-month period. All three members of the firm worked on the estate. They were awarded $22,500 for their general services and $3,000 for their representation of the bank in this court on the earlier appeal.

Mr. Fendler maintains his office in Blytheville, whereas his partners Mr. Bearden and Mr. Gibson have their office in Osceola. Mr. Fendler's separate time sheet recapitulation shows he spent 355.2 hours on the estate. Mr. Bearden's and Mr. Gibson's recapitulation shows 397.2 hours spent on the estate for a total of 752.4 hours. Their agreement with the bank was that they would be paid $75 per hour. At that rate, their fee would be $56,430.

The statutory provision with respect to their fee is found in Ark. Stat. Ann. § 62-2208(d) (Supp. 1985) as follows:

> d. EMPLOYMENT OF LEGAL COUNSEL. The personal representative may employ legal counsel in connection with the probate of the will or the administration of the estate, and the attorney so employed shall prepare and present to the Probate Court all necessary notices, petitions, orders, appraisals, bills of sale, deeds, leases, contracts, agreements, inventories, financial accounts, reports and all other proper and necessary legal instruments during the entire six (6) months, or longer when necessary, while said estate is required by law to remain open, and for said legal services such attorney, unless otherwise contracted with the personal representative, heirs and beneficiaries of said estate, shall be allowed a fee based on the total market value of the real and personal property reportable in the Probate Court, as follows: 5% of the [first] $5,000; 4% of the next $20,000; 3% of the next $75,000; 2¾% of the next $300,000; 2½% of the next $600,000; and 2% of the value of all properties thereafter. If this schedule of fees is determined by the court to be either excessive or insufficient under the circumstances

then the court shall allow said attorney a fee commensurate with the value of the legal services rendered.

Thus if they were awarded a fee based on $100,000 personalty plus real property valued at $1,384,200 or a total of $1,484,200 their fee would be:

| | | | | |
|---|---|---|---|---|
| 5% x $ | 5,000 | = | $ | 250 |
| 4% x | 20,000 | = | | 800 |
| 3% x | 75,000 | = | | 2,250 |
| 2 3/4% x | 300,000 | = | | 8,250 |
| 2 1/2% x | 600,000 | = | | 15,000 |
| 2% x | 384,200 | = | | 7,684 |
| | | | | $34,234 |

■ Unlike the bank, which was awarded far in excess of that which would have been awarded had the statutory guide been followed, these attorneys received far less. The probate judge was perhaps persuaded to cut the lawyers' fee because of the allegations the appellants made to him, and again in their briefs here, that there was duplicate billing of, for example, time spent by Mr. Fendler speaking with Mr. Gibson or Mr. Bearden. We cannot be certain why he awarded them less than that called for by the statutory guide and far less than the amount they would have been due had they been awarded the reasonable sum of $75 for each hour their records show they spent on behalf of the estate. At any rate, we are not willing to say the $22,500 was excessive.

### 5. Notice of appeal and brief

The appellees claim the appellants' notice of appeal is defective because the signature of the attorney was entered by another attorney at the direction of the one whose name was signed. The appellees cite only Ark. R. Civ. P. 11 which required, at the time this notice was filed, that an attorney representing the appealing party sign it.

■ Mr. Stratton, whose name appeared on the notice, testified that he dictated the notice on the telephone to a fellow attorney and authorized the signature of his name. There clearly is no fraud on the court or any party and no prejudice whatever to the appellees. We regard this argument as frivolous.

■ Also frivolous is the appellees' argument that the

appellants violated Arkansas Supreme Court and Court of Appeals Rule 6 by showing disrespect to the trial court in their brief. They argue that (1) because the appellants said they observed no pain or agony in the trial court with respect to the fees being charged to the estate and (2) the trial court erroneously computed the bank's fee at $121 per hour, the appellants were being disrespectful.

Neither of these remarks comes close to those we condemned in *McLemore* v. *Elliot*, 272 Ark. 306, 614 S.W.2d 226 (1981), cited by the appellees, and we will not give further consideration to the point.

The trial court's order is affirmed as modified and remanded for an order not inconsistent with this opinion.

Supplemental Opinion on Denial of Motion to Reconsider
Dismissal of Petition for Rehearing
January 26, 1987

722 S.W.2d 598

PER CURIAM. In our original decision of November 10, 1986, we reduced the fee allowed by the probate judge to the appellee for services as administrator. The appellee mailed a petition for rehearing which was filed in our clerk's office on Monday, December 1, 1986. We denied the petition as being untimely because it was filed more than seventeen calendar days after our decision was rendered and was thus in violation of Arkansas Supreme Court and Court of Appeals Rule 20(a).

Counsel for the appellee contends he had until December 1, 1986, to file the petition for rehearing. He contends Ark. R. App. P. 9 allows extension to the next business day when the seven-

teenth day falls on a legal holiday. He also contends our clerk informed him that the next business day after November 27, Thanksgiving Day, would be Monday, December 1, 1986, because the governor had proclaimed that state offices would be closed on Friday, November 28, 1986.

Rather than decide whether Ark. R. App. P. 9 is controlling over the more specific provision of our rule 20(a) and the effect of the governor's proclamation, which was presumably made pursuant to Ark. Stat. Ann. § 69-112.1 (Repl. 1979), we have reviewed the appellee's petition for rehearing on its merits and concluded that it must be denied, whether or not it was timely.

We have concluded that our rules 20(a) and 29 subsection 6. should be revised to remove the strict seventeen calendar day requirement for filing petitions for review and rehearing so that Ark. R. App. P. 9 will apply to the time limits on those petitions. We make those changes this date in a separate per curiam order.

GLAZE, J., concurs and would permit petition for rehearing to be filed on basis of clerk's office calculated and designated time extended past regular seventeen day period.