David SCHWEDE *v.* STATE of Arkansas

CA CR 94-587                                    896 S.W.2d 454

Court of Appeals of Arkansas
En Banc
Opinion delivered April 19, 1995

*Malcolm R. Smith, P.A.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. Appellant was found guilty during a bench trial of aggravated assault and sentenced to two years in the Arkansas Department of Correction. On appeal, appellant challenges the sufficiency of the evidence to support his conviction and argues that the trial judge erred in not recusing. We affirm.

■■ Appellant first argues that the evidence is not sufficient to sustain his conviction for aggravated assault. The test for determining sufficient proof is whether there is substantial evidence to support the verdict; on appeal, the court reviews the evidence in the light most favorable to the appellee and sustains the conviction if there is any substantial evidence to support it. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Tigue* v. *State*, 319 Ark. 147, 889 S.W.2d 760 (1994).

Arkansas Code Annotated § 5-13-204 (Repl. 1993) provides that:

> (a) A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person.

The record, when viewed in the light most favorable to the state, reveals that on January 16, 1993, Paul West asked appellant to leave the Prairie's Club in Dewitt after appellant had caused a disturbance. After kicking at the door of the club from the outside, appellant proceeded to sit in his truck and "rev" the engine. Mr. West and John Lauderdale went outside to again ask

appellant to leave the premises. According to Mr. West and Mr. Lauderdale, while they were standing approximately five feet from appellant's truck, appellant said "I will show you mother f*****s what a gun is." Appellant then reached for a gun under his seat, pointed it at Mr. West and Mr. Lauderdale, while cocking the hammer. Both Mr. West and Mr. Lauderdale testified that when they heard the hammer cock they immediately ran away.

Appellant argues that the evidence is insufficient to support a conviction for aggravated assault. He argues that if the gun could not be used as a bludgeon or create a danger of a violent response, then there was a necessity, under *Holloway* v. *State*, 18 Ark. App. 136, 711 S.W.2d 484 (1986)(overruled in part by *Doby* v. *State*, 290 Ark. 408, 720 S.W.2d 694 (1986)), for direct proof that the gun was loaded for there to be the creation of a substantial danger. Appellant contends that there is no evidence that the gun was loaded, thus his conviction should be overturned. We find no merit in appellant's argument.

First, we point out that appellant's reliance on *Holloway* v. *State* is misplaced. We found in *Holloway* that the jury could infer from the evidence in that case that the gun was loaded. We did not hold that direct proof of a gun being loaded was required in establishing the creation of a substantial danger.

In *Wooten* v. *State*, 32 Ark. App. 198, 799 S.W.2d 560 (1990), we recognized that our aggravated assault statute is not based upon the use of a deadly weapon or the creation of fear, but requires the creation of "substantial danger of death or serious physical injury to another person." We found in *Wooten* that, based on the evidence that appellant did not point the gun at the officer or expressly threaten the officer, the appellant was not guilty of aggravated assault. In *Wooten*, we referred to the case of *Johnson* v. *State*, 132 Ark. 128, 200 S.W 982 (1918), where it was said that "the act of drawing a pistol, if accompanied by threats evidencing an intention to use it on the person threatened, constitutes an assault."

In this case, the record reveals that appellant made a threatening statement, pointed a pistol at Mr. West and Mr. Lauderdale, and then cocked the hammer. Based on this evidence, like that considered in *Holloway*, the trier of fact could infer from the circumstances that the gun was loaded. We cannot say that

there is no substantial evidence upon which the trial court could find appellant guilty of aggravated assault. *Wooten* v. *State, supra.*

Appellant also argues that the trial judge demonstrated the appearance of bias against him during trial, and thus should have recused. We disagree.

At the close of the State's case, appellant moved for a directed verdict. Appellant argued that the evidence was insufficient under the cases of *Holloway, supra* and *Wooten, supra,* and appellant suggested that the court take a recess to review those cases. The trial judge was amenable to appellant's suggestion and called a recess. When the trial resumed, appellant restated his motion for a directed verdict, and the State responded. In denying the motion, the court discussed at length the aggravated assault statute and the *Holloway* decision, and concluded by saying:

> . . . that it can reasonably be inferred, based upon the evidence before this Court, that the gun was loaded. For why would the Defendant have cocked the gun in preparation of firing the gun if it had been empty. The evidence is found to be amply sufficient to sustain a conviction of aggravated assault, and the court so finds that the defendant is guilty as charged.
>
> I — I'm — Mr. Smith (appellant's counsel), I'm sorry. Did you wish to put on any proof?"

Appellant's counsel responded that he did wish to put on evidence, but, in view of the court's remark, he really didn't know how to proceed. The court then stated "[a]ll right, let me just put it this way. I was addressing your motion, and giving my reasons for that. Now, if you wish to move forward, I will allow you to so do." Appellant requested a brief recess, and afterwards he moved for a mistrial and for the trial judge's recusal, based on the argument that the trial court had already determined appellant's guilt. The motions were denied, and appellant proceeded to put on proof in his defense.

■ A judge's recusal is discretionary, and his decision will not be reversed absent a showing of an abuse of discretion. Further, judges are presumed to be impartial and the party seeking disqualification bears a substantial burden in proving otherwise. *Duty* v. *State*, 45 Ark. App. 1, 871 S.W.2d 400 (1994).

In *Ross* v. *State*, 267 Ark. 1027, 593 S.W.2d 475 (1994), the supreme court found that where the trial judge expressed impatience and irritation in response to statements made by a witness and conducted his own cross-examination of the witness, it gave the appearance of bias against appellant and it was error for the trial judge to refuse to step down from the case. Also, in *Burrows* v. *City of Forrest City*, 260 Ark. 712, 543 S.W.2d 488 (1976), the supreme court held that the trial judge should have recused from a revocation hearing after he told appellant's counsel that appellant should "bring his toothbrush with him," together with other statements which had been made. The supreme court found that these statements could be interpreted to mean that the trial judge's impartiality in the exercise of his judicial discretion was impaired. We find the facts in those two cases quite distinguishable from the evidence in the case at bar.

In this case, the record reflects that the trial judge was specifically responding to appellant's lengthy motion for a directed verdict. The trial judge was considering the cases of *Holloway* and *Wooten* in comparison to the facts of this case and also considering the evidence of guilt in light of appellant's motion. We consider the court's remark that appellant was "guilty" as nothing more than a misstatement. The judge immediately corrected himself, apologized to appellant's counsel, and allowed appellant to present his case. Furthermore, the record does not indicate any other instances where the trial court intimated bias or prejudice toward appellant. From this record, we cannot conclude that the one misstatement by the trial judge, when viewed in context, reveals the level of bias or prejudice toward appellant such that the judge's impartiality was seriously in doubt. Therefore, we cannot say that the trial court abused its discretion in not recusing from the proceedings.

Affirmed.

COOPER, ROBBINS and MAYFIELD, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent from the majority's finding that the trial judge did not abuse his discretion in refusing to recuse from the proceedings. The trial judge's statements that he found the evidence sufficient to sustain the conviction and the defendant guilty as charged conflict with the presumption of innocence to which the appellant was enti-

tled. In making those comments, I believe that the trial judge gave the appearance of having a mind-set which could not be reconciled with the proposition that the trial court was committed to hear all relevant, credible evidence, weighing it and arriving at a judicious result. *See Ross* v. *State*, 267 Ark. 1027, 593 S.W.2d 475 (1980).[1]

Where the trial judge sits as a finder of fact, the appearance of fairness in trial proceedings becomes even more important. *Id.*; *Burrows* v. *Forrest City*, 260 Ark. 712, 543 S.W.2d 488 (1976). The proper administration of the law requires not only that judges refrain from actual bias, but also that they avoid all appearances of unfairness. *Bolden* v. *State*, 262 Ark. 718, 561 S.W.2d 281 (1978). In *Farley* v. *Jester*, 257 Ark. 686, 520 S.W.2d 200 (1975), our Supreme Court stated:

> [C]ourt proceedings must not only be fair and impartial—they must appear to be fair and impartial. This factor is mentioned in a Comment found in 71 Michigan Law Review 538, entitled, "Disqualification of Interest of Lower Federal Court Judges: 28 U.S.C. § 455", as follows:
>
>> Another factor to be considered in a judge's decision to disqualify is the contention that the appearance of impartiality is as important, if not more so, than actual impartiality. In 1952, Justice Frankfurter explained his disqualification in a case by stating that 'justice should reasonably appear to be disinterested as well as be so in fact.' The Supreme Court gave support to this view in the due process context when in *Murchison* Justice Black wrote for the Court:
>>
>>> (T)o perform its high function in the best way 'justice must satisfy the appearance of justice.'
>>
>> More recently the Court set aside an arbitration award and stated that '(a)ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias.'

---

[1] I wish to make it clear that I do not intend, by anything said in this dissent, to impugn the integrity or fairness of the trial judge. I really do not question whether the appellant got a fair trial — only that he did not have a trial which *appeared* fair.

257 Ark. at 692, 520 S.W.2d at 203-204.

The Supreme Court stated in *Patterson* v. *R.T.*, 301 Ark. 400, 784 S.W.2d 777 (1990):

> Of course, a judge trying a case without a jury may develop "bias" as the trial progresses, and that "bias" ultimately may result in the court's judgment. It is, however, the communication of that bias at inappropriate times and in inappropriate ways that will cause us to reverse. That is what has happened in this case. While we suggest no knowing violation or intentional misconduct on the part of the chancellor, we reverse this decision because it was so tainted by the appearance of prejudgment.

301 Ark. at 407, 784 S.W.2d at 781.

Here, the trial judge's comments gave the appearance that the appellant's guilt had been predetermined. Moreover, the appearance of fairness in the case at bar was even more important because the trial judge was sitting as a finder of fact. *See Ross* v. *State, supra.* I believe that to "satisfy the appearance of justice," the trial judge should have resolved the issue in favor of the appearance of fairness and disqualified himself.

ROBBINS and MAYFIELD, JJ., join in this dissent.