RIVERSIDE MARINE REMANUFACTURERS, INC. *v.*
Patrick J. BOOTH and Juanita P. Booth

CA 05-367                                              216 S.W.3d 611

Court of Appeals of Arkansas
Opinion delivered November 2, 2005

*Quattlebaum, Grooms, Tull & Burrow P.L.L.C.*, by: *John E. Tull III, E.B. Chiles IV*, and *Brandon B. Cate*, for appellant.

*Friday, Eldredge & Clark*, by: *Elizabeth R. Murray* and *Daniel L. Herrington*, for appellees.

TERRY CRABTREE, Judge. This appeal concerns appellant Riverside Marine Remanufacturing, Inc.'s liability to provide healthcare insurance to its founder and former majority shareholder and his wife, appellees Patrick Booth (Pat) and Patsy Booth (Patsy), under a consulting agreement that was part of a transaction whereby Booth sold the business to his son Tom. The dispute arose after Pat and Patsy were dropped from Riverside's group plan and were placed on a policy that provided coverage that they considered inferior to the group policy. The trial court construed the agreement as requiring Riverside to provide benefits at the same level or higher as the group plan in effect at the time of the agreement and awarded the Booths damages of $6,042.39 for their out-of-pocket expenses, together with attorney's fees of $49,558.75. Riverside appeals, raising four assignments of error: (1) the trial court erred in not recusing; (2) the trial court erred in concluding that the consulting agreement was ambiguous; (3) in the alternative, the trial court erred in not giving effect to a merger clause and in finding that Riverside agreed to provide a certain level of benefits; (4) the trial court erred in reforming the consulting agreement. We reverse and remand on the first point, thereby pretermitting discussion of the remaining points.

Pat founded Riverside in the 1970s and was its majority shareholder. Tom was the only other shareholder. In August 2001, Pat entered into a stock purchase agreement with Riverside and Tom whereby he would sell 169 shares to Tom. Riverside would redeem another 120 shares. Also as part of the sale, Pat and Riverside entered into a consulting agreement which provided, inter alia, that Pat would receive "[c]ompany paid health insurance for he and his wife and such health insurance shall continue for the life of [Pat] and the life of [Pat's] wife, Patsy Booth." The consulting agreement further provided that it would expire upon Pat's death, provided that Riverside would continue health insurance coverage for Patsy until her death. The consulting agreement was specifically mentioned in the stock purchase agreement and incorporated by reference therein.

In July 2002, Riverside's insurance agent, with Tom's approval, wrote a letter to Pat, stating that, because Pat was not a full-time Riverside employee, it was illegal under federal law to carry him on Riverside's group policy. The letter also suggested alternative coverages. On February 20, 2003, Tom notified Riverside's insurance carrier that, effective March 1, 2003, Pat and Patsy were to be dropped from the group policy. Pat and Patsy obtained other coverage, for which Riverside has continued to pay.

Pat and Patsy filed suit against Riverside in August 2003, alleging that Riverside had breached the consulting agreement by providing less favorable benefits. The complaint sought damages for their additional out-of-pocket expenses, together with specific performance of the consulting agreement. In the alternative, they sought reformation of the consulting agreement. Riverside answered, denying that it had breached the consulting agreement and stating that the agreement required only that it provide health coverage, not group coverage.

Prior to trial, Riverside filed a motion *in limine* seeking to prevent Pat and Patsy from introducing parol evidence to vary the terms of the consulting agreement. According to Riverside, the hearing on its motion was not transcribed, and during that hearing, the trial judge denied the motion and indicated that Riverside was going to lose the case.

At the end of the first day of the bench trial and before Pat and Patsy had rested their case, Riverside's attorney asked the trial judge about a ruling on the record on its motion *in limine*, and the judge indicated that the motion was denied. The trial judge then stated that "unless something happens, [Riverside is] going to have to pay. If you-all want to settle this beforehand, now is the time." The judge then stated that he was giving his thoughts on the matter in case the parties did not want to proceed and acknowledged that Riverside had not put on its defense. The next morning, Riverside moved for a mistrial and requested the trial judge's recusal because of his comments. The trial judge denied the motions.

The trial court ruled from the bench that the term "company paid health insurance" was ambiguous because it was susceptible to more than one equally reasonable construction. The court also ruled that the insurance plan should be comparable to the plan in effect at the time of the agreements, July 18, 2001, and that the net out-of-pocket healthcare costs for Pat and Patsy should be no

more than they had paid at that time. The trial court, upon Riverside's request, entered more detailed written findings of fact. The written findings also included, as an alternative basis, that the trial court was reforming the consulting agreement to specify that the insurance coverage would be at the same level as of the time of the agreement. Judgment was entered in accordance with the trial court's written findings and awarded Pat and Patsy damages of $6,042.39 and $49,558.75 for their attorney's fees. An amended judgment was entered to award Pat and Patsy an additional $3,092.28 for their costs. This appeal timely followed.

For its first point, Riverside argues that the trial court erred in not recusing after the trial judge had made statements that Riverside asserts amounted to prejudgment of the case. This court's general standard of review for cases involving recusal is well settled. The decision to recuse is within the trial court's discretion, and it will not be reversed absent abuse. *Anderson v. State*, 357 Ark. 180, 163 S.W.3d 333 (2004). An abuse of discretion can be proved by a showing of bias or prejudice on the part of the trial court, and the burden is on the party seeking to disqualify. *Id.* To decide whether there has been an abuse of discretion, we review the record to determine if prejudice or bias was exhibited. *Id.* Absent some objective demonstration by the appellant of the trial judge's prejudice, it is the communication of bias by the trial judge that will cause us to reverse his or her refusal to recuse. *Id.*

The comments complained of occurred while Pat and Patsy were still presenting their case but after Tom and Riverside's insurance agent, Greg Hatcher, had testified. In making those comments, the trial judge, although recognizing that Riverside had yet to present its case, gave the appearance of having a mindset that could not be reconciled with the proposition that he was committed to hear all relevant, credible evidence, weighing it and arriving at a judicious result. *See Ross v. State*, 267 Ark. 1027, 593 S.W.2d 475 (Ark. App. 1980). In *Ross*, this court reversed the trial court's revocation of a suspended sentence. At the beginning of the hearing on a petition to revoke a suspended sentence based upon allegations of use of alcohol, the judge asked the defendant if he understood that the terms of his suspended sentence required him to refrain from using alcohol. Upon the defendant's admitting that he understood the suspended sentence was based upon this condition, the judge told the defendant's attorney: "[Y]ou can call what witnesses you want, but I cannot sanction this type of conduct. . . ." This court reversed, stating that the trial judge's

comments showed "a [mindset] which cannot be reconciled with the proposition that the trial court is committed to hear all relevant, credible evidence weighing it and arriving at a judicious result." 267 Ark. at 1032-33, 593 S.W.2d at 478.

Where the trial judge sits as a finder of fact, the appearance of fairness in trial proceedings becomes even more important. *Burrows v. Forrest City*, 260 Ark. 712, 543 S.W.2d 488 (1976); *Ross, supra.* The proper administration of the law requires not only that judges refrain from actual bias but also that they avoid all appearances of unfairness. *Bolden v. State*, 262 Ark. 718, 561 S.W.2d 281 (1978). In *Farley v. Jester*, 257 Ark. 686, 520 S.W.2d 200 (1975), our supreme court stated:

> [C]ourt proceedings must not only be fair and impartial — they must appear to be fair and impartial. This factor is mentioned in a Comment found in 71 Michigan Law Review 538, entitled, "Disqualification of Interest of Lower Federal Court Judges: 28 U.S.C. § 455," as follows:
>
>> Another factor to be considered in a judge's decision to disqualify is the contention that the appearance of impartiality is as important, if not more so, than actual impartiality. In 1952, Justice Frankfurter explained his disqualification in a case by stating that "justice should reasonably appear to be disinterested as well as be so in fact." The Supreme Court gave support to this view in the due process context when in *Murchison* Justice Black wrote for the Court:
>>
>>> "(T)o perform its high function in the best way 'justice must satisfy the appearance of justice'."
>>
>> More recently the Court set aside an arbitration award and stated that "(a)ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias."

257 Ark. at 692, 520 S.W.2d at 203-04. The supreme court stated in *Patterson v. R.T.*, 301 Ark. 400, 784 S.W.2d 777 (1990):

> Of course, a judge trying a case without a jury may develop "bias" as the trial progresses, and that "bias" ultimately may result in the court's judgment. It is, however, the communication of that bias at inappropriate times and in inappropriate ways that will cause us to

reverse. That is what has happened in this case. While we suggest no knowing violation or intentional misconduct on the part of the chancellor, we reverse this decision because it was so tainted by the appearance of prejudgment.

301 Ark. at 407, 784 S.W.2d at 781.

Here, the trial judge's comments gave the appearance that Riverside's liability had been predetermined. Moreover, the appearance of fairness in the case at bar was even more important because the trial judge was sitting as a finder of fact. *See Ross, supra.* To "satisfy the appearance of justice," the trial judge should have resolved the issue in favor of the appearance of fairness and disqualified himself.

There is another reason why this case should be reversed on this issue: the trial court's failure to make a record of the hearing on Riverside's motion *in limine* during which one of the statements at issue was supposedly made. Administrative Order No. 4 provides that, "[u]nless waived on the record by the parties, it *shall* be the duty of any circuit court to require that a verbatim record be made of all proceedings pertaining to any contested matter before it." (emphasis added). *See also* Ark. Code Ann. § 16-13-510 (Repl. 1999). The supreme court has said that it strictly construes and applies Administrative Order No. 4. *Robinson v. State,* 353 Ark. 372, 108 S.W.3d 622 (2003); *see also Bradford v. State,* 351 Ark. 394, 94 S.W.3d 904 (2003) (emphasizing that a verbatim record of the proceedings is a requirement). At oral argument, the parties agreed that there was no verbatim record made of the hearing on the motion *in limine.* They could not explain this failure. Both the supreme court and this court have held that a party's silence on this issue at trial will not be construed as an implied waiver of the verbatim record requirement. *Robinson, supra; Mattocks v. Mattocks,* 66 Ark. App. 77, 986 S.W.2d 890 (1999).

Reversed and remanded with directions to transfer this case to another judge.

HART and GLOVER, JJ., agree.