Cite as 2023 Ark. 194

# SUPREME COURT OF ARKANSAS

No. CV–20–265

|  |  |
|---|---|
| DONNELL BAUER AND MARILYN BAUER<br> APPELLANTS/CROSS-APPELLEES<br><br>V.<br><br>JESSE LEE BEAMON, JR., AND MARY A. BEAMON, INDIVIDUALLY AND AS TRUSTEES OF THE JESSE LEE BEAMON, JR. AND MARY A. BEAMON FAMILY TRUST DATED 13TH OCTOBER 2015; AND THE JESSE LEE BEAMON, JR. AND MARY A. BEAMON FAMILY TRUST DATED 13TH OCTOBER 2015<br> APPELLEES/CROSS-APPELLANTS | Opinion Delivered: December 21, 2023<br><br>APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17CV-17-549]<br><br>HONORABLE MICHAEL MEDLOCK, JUDGE<br><br><u>REVERSED ON DIRECT APPEAL;</u> <u>AFFIRMED ON CROSS-APPEAL;</u> <u>COURT OF APPEALS OPINION</u> <u>VACATED</u>. |

**BARBARA W. WEBB, Justice**

This matter arises from a real estate transaction between appellants Donnell and Marilyn Bauer and appellees Jesse Lee and Mary A. Beamon. The Bauers appeal the Crawford County Circuit Court's judgment awarding damages in favor of the Beamons. They argue that the circuit court erred by (1) denying their jury-trial demand; (2) awarding damages on a breach-of-contract claim that was not alleged in the Beamons' complaint; and (3) awarding attorney's fees and costs. The Beamons cross-appeal, arguing that the circuit court erred by denying their request for rescission of the real estate contract. We reverse on direct appeal and affirm on cross-appeal.

## I. *Facts*

This case concerns Lot 24A and Lot 18 of the Highland Hills subdivision in Van Buren. The residence on Lot 24A sits on a hillside above the adjacent parcel, Lot 18. The Bauers purchased Lot 24A and Lot 18 in 2004. They lived in the residence on Lot 24A and constructed a metal barn and driveway on Lot 18. Shortly after the barn was built, Mr. Bauer noticed that water began to seep downhill toward the barn. To address the problem, the Bauers used a bulldozer to open a drainage ditch and, later, rented a mini excavator to further help water drainage on the hillside above the barn. The Bauers also hired a contractor to reshape the hill and remove a dead tree.

In 2013, the Bauers listed Lot 18 for sale and executed a seller property disclosure wherein they acknowledged drainage and erosion problems on the hillside straddling Lot 24A and Lot 18. John Will purchased Lot 18 later that same year. After the sale, Mr. Bauer told Mr. Will that he had twice pushed dirt up the hill and rain had washed it back out. Throughout Mr. Will's ownership of Lot 18, he observed the hillside would become unstable with heavy rain, and soil would accumulate against the barn. In 2016, Mr. Will hired a contractor to work on the soil on the hillside above the barn.

The Bauers also listed Lot 24A for sale and in 2015 executed a seller property disclosure wherein they asserted no knowledge of "any settling from any cause, or slippage, sliding or other poor soil conditions at the Property or at adjacent properties." They also asserted no knowledge of "any facts, circumstances or events on or around the Property which, if known to a potential buyer, could adversely affect in a material manner the value or desirability of the Property." Further, the Bauers denied any knowledge of "any other defects in the Property."

On April 1, 2016, the Beamons visited Lot 24A with their real estate agent. They also drove up the driveway on Lot 18 and viewed the downslope portion of Lot 24A. Mr. Beamon observed "off on the downhill side there was some disturbed ground and bare ground" and what appeared to be "dirt work to control the surface erosion." Despite the apparent conditions of the hillside, the Beamons purchased Lot 24A for $315,000 in reliance on the Bauers' written disclosures.

The Beamons had a survey of Lot 24A performed on April 28, 2016. During this time, Mr. Bauer exchanged text communications with Mr. Will regarding the survey. Both men acknowledged in this exchange the poor soil conditions on the hillside and their failed efforts to remediate the problem. The Beamons were not advised of this information, and the Bauers did not amend their disclosure form to reflect the soil conditions on Lot 18.

The sale closed on May 26, 2016. Mr. Bauer came out to the property that day to explain the operating systems in the house. During their discussion, Mr. Beamon asked about the soil conditions on the hillside, and Mr. Bauer disclosed for the first time that he had uncovered a water seep on Lot 18 when he built the metal barn.

The Beamons began moving into the residence on Lot 24A on June 17, 2016. The following day, Mr. Beamon noticed a mold-like substance in the master bedroom. Mr. Beamon contacted his real estate agent to discuss the mold situation and erosion concerns on the hillside. At this point, the Beamons began moving their possessions out of the house and took up temporary residence nearby. They also had their home inspector, Lowell Coomer, test the substance, which he confirmed to be mold. Mr. Coomer recommended EGIS, a mold-remediation firm. EGIS's testing revealed extensive mold in the master bedroom. The inspection further revealed high humidity throughout the residence, which

is conducive to mold growth. EGIS determined the culprit was a condensate line that was improperly installed in the return air plenum, resulting in humidity distribution throughout the residence. This condition would not have been discoverable in a routine home inspection. The Beamons paid $20,716.16 for mold remediation and HVAC repair.

Due to the mold remediation, the Beamons did not move into the Lot 24A residence until September 1, 2016. Thereafter, the geotechnical engineering firm GTS, Inc., was retained to resolve the instability issues on Lot 24A. Upon investigation, GTS concluded that if not remediated, the slope's instability would progress up gradient to the residence on Lot 24A. GTS recommended stabilizing the hillside by re-sloping and compacting the soil and placing a fabric lining and stone riprap over the subject area.

The Beamons hired a contractor to perform the slope-stabilization work. The contractor re-graded and compacted the slope and was prepared to lay the fabric and riprap when a rain caused tension cracks to form. The plan to lay fabric lining and riprap was abandoned. The Beamons then requested a report from GTS regarding what actions should be taken next to address the hillside. GTS issued a preliminary report on September 26, 2017, concluding that the slope failure could not be remediated from Lot 24A. The Beamons paid the contractor $30,950 for the work completed and paid GTS $5,900.

Based on the GTS report, the Beamons' counsel sent the Bauers a rescission letter on September 29, 2017. In pertinent part, the letter stated that the Beamons had

> investigated and, based on engineering advice, have attempted repair work regarding the water seep on the property (and resulting erosion) of which you informed Mr. Beamon after the closing of the real estate transaction. Your real estate disclosures regarding the property did not disclose the water and erosion problems, and the disclosures did not reveal the previous repair actions apparently attempted by you and others on adjacent property and on the subject property. The recent August rains

4

made obvious the attempted repair work has failed to solve the water/erosion problems.

The Beamons "concluded the appropriate action is a rescission of the real property sale/purchase" and sought "return of the money paid for the property." In addition, the Beamons sought reimbursement for costs associated with the mold remediation and the attempted stabilization of the hillside.

The Beamons filed their operative complaint on September 11, 2018, which included an equitable claim for rescission and a legal claim for damages. Both claims were based on the same factual allegations and a common theory of fraud and deceit. The Bauers filed an answer demanding a jury trial. In response, the Beamons moved the circuit court to strike the jury-trial demand and instead schedule a bench trial. Pursuant to the doctrine of election of remedies, the Beamons elected the remedies associated with their equitable claim for rescission. However, the Beamons asserted that "[e]ven if rescission is not granted[,] . . . [they] are entitled to recover their damages proved at trial."

The circuit court granted the Beamons' request for a bench trial, and a trial was held in September 2019. The circuit court issued a letter opinion in which it rejected the Beamons' rescission claim because they "did not act with reasonable diligence in advising the sellers of their intent to rescind." Rather, the circuit court found

> [t]he evidence shows [the Beamons] were put on notice of the issue of mold shortly after taking possession; further, conversations with Mr. Bauer indicate they were told about the "wet weather" issue with the Lot 18, shortly after closing. They acted with intention to keep, maintain and repair the property for at least 12 or more months. They engaged in mold eradication, hired engineers, excavators and various repairs after taking possession. These acts of possession, repair and reclamation are inconsistent with the intent to rescind and further, as stated above, impair the opportunity to restore the parties to the original position as nearly as possible, that being the goal of rescission.

Despite rejecting the rescission claim, the circuit court concluded that the Beamons were entitled to damages for "breach of the contract" because the Bauers "did not disclose the issues with the adjoining lot and slope." As such, the circuit court awarded the Beamons damages for land-reclamation expenses. In addition, while the circuit court found rescission was not appropriate as to the mold issue, it noted that "the house was delivered to the [Beamons] in a defective condition." According to the circuit court, the improperly installed condensate line was a defect that "breached the contract" and, therefore, the Beamons were entitled to damages for the cost of the mold remediation.

The circuit court later entered a formal judgment incorporating its letter opinion. The Beamons subsequently moved for attorney's fees, which the circuit court granted. The Bauers filed their notice of appeal. For reversal, they argued that the circuit court erred by (1) holding a bench trial on the Beamons' legal claim, in violation of the Bauers' constitutional right to a jury; (2) awarding damages on a breach-of-contract claim that was not alleged in the Beamons' complaint; and (3) awarding attorney's fees and costs.[1] The

---

[1]We note that this court has previously held that where a circuit court grants attorney's fees after entry of the judgment, the challenging party must file a notice of appeal from the fee order and, without such notice, this court will not address any argument pertaining to the fee issue. *Craig v. Carrigo*, 353 Ark. 761, 777, 121 S.W.3d 154, 164 (2003). Here, the record reveals that judgment was entered on November 4, 2019, and the order granting fees was entered on December 26, 2019. The Bauers filed their notice of appeal from the underlying judgment on November 27, 2019; however, they failed to file a notice of appeal adding the fees order. Accordingly, we lack jurisdiction to review the fees order on appeal. *Id*.

Further, because the Bauers' notice of appeal predates the circuit court's initial decision on the fees issue, they cannot avail themselves of Rule 4(a) of the Arkansas Rules of Appellate Procedure–Civil.

Beamons filed a cross-appeal, arguing that the circuit court erred by denying their rescission claim.

The court of appeals reversed and dismissed the circuit court's decision on direct appeal. It held that the circuit court erred by failing to hold the Beamons to their elected remedy of equitable rescission and, consequently, violated the Bauers' right to a jury trial. *Bauer v. Beamon*, 2023 Ark. App. 111, at 16, 663 S.W.3d 388, 395. On cross-appeal, the court of appeals affirmed the circuit court's finding that the Beamons had waived their right of rescission. *Id*. at 21, 663 S.W.3d at 397. The Beamons filed a petition for review, which this court granted. When we grant a petition for review, we consider the appeal as though it had been originally filed in this court. *Covenant Presbytery v. First Baptist Church*, 2016 Ark. 138, at 1, 489 S.W.3d 153, 155.

## II.  *Direct Appeal*

The Bauers argue that the circuit court erred by granting the Beamons' motion for a bench trial and, after denying their rescission claim, awarding damages on a legal claim for breach of contract that was not pled. Such action, the Bauers contend, had the effect of both denying their right to a jury trial on a legal claim and impermissibly electing another inconsistent remedy on the Beamons' behalf. The Beamons respond by arguing that the circuit court did not err in granting their request for a bench trial because their claim for recission is historically an equitable remedy to which no right to a jury trial attaches. The Beamons also aver that the circuit court was not barred from awarding "less disruptive remedies" once it determined that rescission was unsuitable.

7

This court employs a de novo standard of review for claims to a right to a jury trial. *Bandy v. Vick*, 2020 Ark. 334, at 4, 608 S.W.3d 903, 905. We are not bound by the circuit court's decision; however, a circuit court's interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *Rowe v. Hobbs*, 2012 Ark. 244, at 5, 410 S.W.3d 40, 43.

The Arkansas Constitution does not ensure the right to a jury in all possible instances, but rather in those cases where the right to a jury trial existed when the constitution was framed. *Baptist Health v. Murphy*, 2010 Ark. 358, at 13, 373 S.W.3d 269, 280. Further, the right to a jury trial extends only to those cases that were subject to trial by jury at the common law. *Williams v. Baptist Health*, 2020 Ark. 150, at 12, 598 S.W.3d 487, 495. In equitable proceedings, there was no right to a jury trial at the common law. *Id*. Thus, the constitutional right to a jury trial does not extend to cases in equity. *In re Estates of McKnight v. Bank of Am., NA.*, 372 Ark. 376, 380, 277 S.W.3d 173, 177 (2008).

The rescission of a contract is an equitable remedy. *See, e.g., Phelps v. U.S. Life Credit Life Ins. Co.*, 336 Ark. 257, 260, 984 S.W.2d 425, 427 (1999). Because the Beamons elected rescission as their remedy, the circuit court properly considered the claim without a jury.

The Beamons assert that the circuit court was still empowered to award damages after it rejected their claim for rescission. As mentioned above, the circuit court awarded legal damages reimbursing the Beamons for mold remediation and land-reclamation expenses. It found such damages were warranted based on "breach of the contract." But the Beamons' equitable and legal claims were both brought under a theory of fraud and deceit––they never pled breach of contract. Nor did they move to amend their complaint to add a breach-of-contract claim under Arkansas Rule of Civil Procedure 15, and no evidence of

8

breach of contract was adduced at trial. We have long held that a party is bound by his pleadings and the allegations therein. *See, e.g.*, *Dupwe v. Wallace*, 355 Ark. 521, 530, 140 S.W.3d 464, 470 (2004) (quoting *Int'l Harvester Co. v. Burks Motors, Inc.*, 252 Ark. 816, 821, 481 S.W.2d 351, 355 (1972)). The Beamons therefore could not recover damages for breach of contract. As a result, the circuit court's award of damages was erroneous. Consequently, we reverse the case on direct appeal.

### III. *Cross-Appeal*

The Beamons argue that the circuit court erred in denying their request for rescission. They contend that the record demonstrates that the Bauers intentionally withheld information concerning the slope instability on Lot 18, or at minimum, that their behavior constituted constructive fraud. The Beamons further contend that the circuit court erred when it found they had failed to exercise reasonable diligence in advising the Bauers of their intent to rescind. They assert that the extent of the soil conditions was not discovered until September 26, 2017, and they issued their notice of rescission three days later.

The standard of review on appeal from a bench trial is whether the circuit court's findings of fact were clearly erroneous or clearly against the preponderance of the evidence. *James v. Mounts*, 2023 Ark. 53, at 8, 660 S.W.3d 801, 807. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been made. *Id.*

One who desires to rescind a contract on grounds of fraud or deceit must do so as soon as he discovers the truth. *Douglass v. Nationwide Mut. Ins. Co.*, 323 Ark. 105, 114, 913 S.W.2d 277, 282 (1996). The rescinding party must announce his purpose at once and act with reasonable diligence so that the parties may be restored to their original position as

nearly as possible. *Id.* But if he continues to treat the property involved as his own or conducts himself with reference to the transaction as though it were still subsisting and binding, he will be held to have waived his right to rescission and will be conclusively bound by the contract as if the fraud had not occurred. *Herrick v. Robinson*, 267 Ark. 576, 585, 595 S.W.2d 637, 643 (1980).

We cannot say that the circuit court clearly erred in finding that the Beamons had waived their right to rescission. The Beamons learned of the Bauers' omissions on their disclosure form when, on the day of closing, Mr. Bauer told them about the water seep on Lot 18. Shortly after taking possession of Lot 24A, the Beamons discovered mold in the residence. Yet, over the course of a year, they engaged in mold eradication and attempted to remediate the soil conditions on the hillside. These acts of possession, repair, and reclamation are inconsistent with an intent to rescind. Accordingly, we affirm the circuit court's dismissal of the Beamons' rescission claim.

Reversed on direct appeal; affirmed on cross-appeal; court of appeals opinion vacated.

*Kenneth W. Cowan, PLC*, by: *Kenneth W. Cowan*, for appellants/cross-appellees.

*Daily & Woods, P.L.L.C.*, by: *Jerry L. Canfield*, for appellees/cross-appellants.