Cite as 2024 Ark. 43

# SUPREME COURT OF ARKANSAS

**No.** CV-23-755

|  |  |
|---|---|
|  | **Opinion Delivered:** April 4, 2024 |
| ARKANSAS VOTER INTEGRITY INITIATIVE, INC., AND CONRAD REYNOLDS<br><br>APPELLANTS | |
|  | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION |
| V. | [NO. 60CV-22-8658] |
| JOHN THURSTON, IN HIS OFFICIAL CAPACITY AS ARKANSAS SECRETARY OF STATE; THE ARKANSAS STATE BOARD OF ELECTION COMMISSIONERS, IN ITS OFFICIAL CAPACITY; AND ELECTION SYSTEMS AND SOFTWARE, LLC<br><br>APPELLEES | HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br><br>AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellants Arkansas Voter Integrity Initiative, Inc., and Conrad Reynolds appeal from the Pulaski County Circuit Court's order dismissing their amended complaint for declaratory and injunctive relief against appellees John Thurston, in his official capacity as Arkansas Secretary of State; the Arkansas State Board of Election Commissioners, in its official capacity (Board); and Election Systems and Software, LLC (ESS). For reversal, appellants argue that (1) the circuit court erred in determining that the voting machines, as they are currently configured, comply with Arkansas Code Annotated section 7-5-504(6) and (7); (2) the circuit court abused its discretion when it denied the motion to recuse; and

(3) the circuit court's denial of the motion for new trial was a reversible and serious error. We affirm.

On May 4, 2023, appellants[1] filed an amended complaint against appellees seeking a declaratory judgment that the voting machines currently approved by Thurston and the Board (collectively, the State) failed to comply with Ark. Code Ann. § 7-5-504 and the Help America Vote Act of 2002 (HAVA) because the voter cannot independently verify the voter's selections on the ballot prior to casting his or her vote. Appellants asserted that the ballot printed out by the voting machine contains both bar codes and the voter's selections in English but that the vote tabulator scans only the bar codes. The complaint alleged that because most ordinary voters cannot read the bar codes, the voters are unable to verify their votes as required by state and federal law. Appellants also alleged that both the State appellees and ESS, which manufactured and sold the ExpressVote electronic ballot-marking devices and the DS200 electronic tabulators at issue to the State, committed an illegal exaction by using public funds collected from fees or taxes for the purchase and maintenance of these machines. Further, the complaint claimed that ESS violated the Arkansas Deceptive Trade Practices Act (ADTPA) and committed fraud by representing and warrantying that its machines complied with state and federal law. Appellants requested class-action status as to the illegal-exaction, ADTPA, and fraud claims. Finally, appellants requested temporary and permanent injunctive relief as well as damages and attorney's fees.

---

[1]Donnie Scroggins was also a named plaintiff below but is not participating in this appeal.

2

They requested a trial by jury "on all issues so triable" and that the case be expedited on the circuit court's docket. Appellants also filed a motion for an injunction on May 11, 2023.

On May 17, ESS filed a motion to dismiss the amended complaint pursuant to Ark. R. Civ. P. 8(a)(1) and 12(b)(6) for failure to state a claim. Following a request by appellees to remove the case to federal court and a subsequent order remanding the case to the circuit court, the State appellees filed an answer to the amended complaint on August 1, 2023, denying that appellants were entitled to declaratory or injunctive relief on any of the claims and affirmatively asserting that the complaint should be dismissed pursuant to Ark. R. Civ. P. 12(b)(6). The State appellees further denied that appellants had pled facts sufficient to prove that they were entitled to a jury trial on any of the issues raised. A response opposing appellants' motion for an injunction was also filed by the State appellees, and ESS adopted the arguments made in the response. Appellants then filed a reply, and appellees filed a supplemental response.

At a hearing on August 7, 2023, the circuit court asked appellants if they still desired preliminary and permanent injunctive relief. Appellants answered affirmatively but indicated that they were not prepared to argue the issue that day. They requested that the hearing be reset in approximately ten days or, alternatively, that the court "expedite the final trial to one to two months out, and let's just have a trial and be done with it." The circuit court granted appellants' request for a continuance over the opposition of appellees. However, the court warned appellants to be prepared at the next hearing on September 11, 2023, because depending on the evidence presented, it might advance the hearing to a trial on the merits in order to resolve the case at the circuit court level. After discussing the parties'

deadlines for disclosing experts and taking any needed depositions before the September hearing, appellants indicated that they were prepared to meet the court's schedule. The circuit court then emphasized to the parties that "we're moving this thing forward at the trial court level" at the next hearing. The court took ESS's motion to dismiss under advisement.

At the September 11 hearing, the circuit court stated it was set to hear testimony and evidence that day and that it might ask for briefs if the parties believed further argument was needed. Appellants proceeded to call Daniel Shults, the director of the Board, to testify. Shults explained how voting occurs in Arkansas using the ExpressVote ballot-marking device and the DS200 vote tabulator. After completing the check-in process, the voter receives a piece of paper with a bar code that he or she inserts into the ExpressVote device, which displays the appropriate ballot selections for that voter. The voter then makes selections for each race or issue on the touchscreen, and a review screen is shown that displays all of the voter's selections. Shults testified that the voter is able to go back and make changes to those selections if desired. If satisfied, the voter clicks the button to print the ballot-summary card, which contains both bar codes representing the voter's selections as well as the voter's selections written in English. Finally, the voter casts his or her ballot by inserting the ballot-summary card into the DS200 vote tabulator. An exemplar ballot from the November 2016 general election was introduced to demonstrate how the selections are displayed on the printed ballot. Shults testified that the bar codes on the ballot are the grid coordinates for each selection and that the tabulator reads only the bar codes. When Shults was asked how the voter knows that his or her ballot has been printed accurately by the

ExpressVote device, he stated that it was possible to confirm the accuracy of the bar codes but that the average voter will read the selections written in English.

On cross-examination, Shults testified that the Board was required to approve the voting equipment utilized in Arkansas to ensure that it satisfies the statutory requirements. In addition, he stated that the Federal Election Assistance Commission must certify the voting machines, and exhibits were admitted demonstrating that the machines provided by ESS had been certified. Appellees also introduced through Shults's testimony pictures showing each step required for voters to cast their ballots using the ExpressVote ballot-marking devices and DS200 tabulators. The circuit court questioned Shults as to whether the voter is required to review the summary of that voter's selections on the ExpressVote device before printing the ballot, and Shults responded affirmatively.

At the conclusion of Shults's cross-examination, the circuit court confirmed with appellants that they were seeking a "threshold" declaration that the voting machines do not comply with Ark. Code Ann. § 7-5-504 due to the fact that the tabulator reads only the bar codes on the ballot. Appellants agreed and stated that they were "not challenging anything about the software has not performed as they say it performs." The court then asked how the testimony of appellants' experts was relevant to the legal question at issue. Appellants responded that their experts would testify it is possible to exploit the software, and the circuit court stated that this was a challenge to the integrity of the software rather than the statutory requirements at issue. The court then concluded that the voting process described by Shults complied with the statutory requirement that the voters must be able to verify their vote selections on the ballot before their ballots are cast and that the lawsuit failed on that

threshold issue. The court asked appellants if they had any evidence that the bar codes were inaccurate or "that somehow the votes from the machine are not totaling up correctly or something," and appellants stated that they did not. The circuit court then indicated that no further testimony or evidence was needed and instructed the parties to draft a final order so that appellants could appeal if they desired.

When the circuit court announced its ruling, appellants indicated that they were troubled because they had called only one witness and had not presented their entire case. The court stated that it was "not meaning to cut [them] off" and again asked if appellants had any evidence that pertained to the threshold issue before the court. Appellants replied that they had two experts who would testify that the software can be exploited in such a manner that the voter cannot trust the accuracy of the bar codes. When the circuit court asked appellants if they had evidence that this had happened, appellants responded that they only had testimony that it was possible—not that it had occurred. The court noted that it was "accepting that as a proffer, that you have expert testimony that it's possible." Appellants continued to argue that the court had ruled before hearing all of their evidence, and the circuit court stated that "this was a declaratory judgment as to the plain language of the statute," that appellants did not disagree with the evidence presented that was germane to that issue, and that the voting process satisfies the statute as it is presently written. Appellants then moved for recusal of the circuit court, claiming that it had decided the case before hearing the evidence. The court denied the motion and again asked what other relevant evidence or testimony appellants had to offer. Appellants responded that they did not have anything else to add to the record.

On September 22, 2023, the circuit court entered an order denying appellants' motion for an injunction, granting ESS's motion to dismiss, and dismissing appellants' amended complaint with prejudice. The court summarized the voting process described by Shults, stating that the voter has the opportunity to review his or her selections on the ExpressVote device and make any desired changes; that after reviewing and verifying his or her choices on the device, the voter prints the card; that the printed card displays the voter's selections for each contest in written, "human-readable" text as well as corresponding bar code; that the printed card is the voter's ballot; that the DS200 tabulator reads only the bar codes to tabulate the votes; and that the ballot is cast when it is inserted into the DS200 tabulator. The circuit court found that the ExpressVote ballot-marking device and the DS200 tabulator as configured and used in Arkansas elections comply with the plain language of Ark. Code Ann. § 7-5-504(6) and (7) and 52 U.S.C. § 21081(a)(1)(A)(i) of the Help America Vote Act of 2002; that there was no evidence that the bar codes on any Arkansas voter's ballot did not correspond with the voter's selections reflected in the readable text; and that there was no evidence that the bar codes on any Arkansas voter's ballot had been altered or were inaccurate.

Appellants filed a motion for new trial pursuant to Ark. R. Civ. P. 59 and 60 on September 29, 2023. They claimed that the circuit court denied their right to a jury trial by making a final adjudication on the merits of their case at the September 11 hearing rather than considering only whether an injunction should be entered. Appellants argued that the circuit court also made findings of fact, which they contended was the province of the jury. They requested that the court grant their motion for new trial, rule only on their motion

7

for a preliminary injunction, and set the matter for a jury trial. Appellants filed a timely notice of appeal from the circuit court's September 22 order and an amended notice of appeal from the deemed denial of their motion for new trial. We granted appellants' request for expedited consideration of the appeal on December 5, 2023.

On appeal, appellants first argue that the circuit court erred in determining that the voting machines, as currently configured, comply with Ark. Code Ann. § 7-5-504(6) and (7). The relevant statutory provisions are set forth below:

> No make of voting machine shall be approved for use unless it is so constructed that:
> (6) It shall permit the voter to verify in a private and independent manner the votes selected by the voter on the ballot before the ballot is cast;
> (7) It shall provide the voter with the opportunity in a private and independent manner to change the ballot or correct any error before the ballot is cast[.]

Ark. Code Ann. § 7-5-504(6) & (7) (Supp. 2023).[2]

The primary rule of statutory interpretation is to give effect to the intent of the legislature. *Mississippi Cnty. v. City of Blytheville*, 2018 Ark. 50, 538 S.W.3d 822. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* When the language is plain and unambiguous, we determine the drafter's intent from the ordinary meaning of the language used. *White v. Owen*, 2021 Ark. 31, 617 S.W.3d 241. Statutes relating to the same subject matter must be construed together and in harmony, if possible, and we strive to reconcile statutory

---

[2]The HAVA contains nearly identical language requiring that each voting system used in an election for federal office "permit the voter to verify (in a private and independent manner) the votes selected by the voter on the ballot before the ballot is cast and counted" and "provide the voter with an opportunity (in a private and independent manner) to change the ballot or correct any error before the ballot is cast and counted[.]" 52 U.S.C. § 21081(a)(1)(A)(i)–(ii).

8

provisions to make them consistent, harmonious, and sensible. *Hendrix v. Alcoa, Inc.*, 2016 Ark. 453, 506 S.W.3d 230. The correct interpretation and application of an Arkansas statute is a question of law that is reviewed de novo, as it is for this court to determine the meaning of a statute. *Calhoun v. Area Agency on Aging of Sw. Ark.*, 2021 Ark. 56, 618 S.W.3d 137; *Hill v. Gallagher*, 2016 Ark. 198, 491 S.W.3d 458.

Appellants contend that the language in Ark. Code Ann. § 7–5–504(6) and (7) is unambiguous and requires that a voter must be able to verify his or her vote selections on the ballot before it is cast and be able to change or correct any error before the ballot is cast. Appellants argue that because the voter is unable to read the bar codes on the printed ballot and the tabulator scans only the bar codes, the voter cannot verify the part of the ballot containing his or her vote selections.

We agree with the circuit court that the voting process described by Shults complies with the plain language in section 7-5-504(6) and (7). According to Shults's undisputed testimony, the voter makes his or her selections on the ExpressVote ballot-marking device, reviews those selections on the summary screen, makes any desired changes, and prints the ballot containing the voter's selections. The ballot that is printed out displays the vote selections in both written English and corresponding bar codes. Thus, the voter is able to review the summary screen and "correct any errors" before printing and casting the ballot. *See* Ark. Code Ann. § 7-5-504(7). Further, the voter is able to "verify the votes selected by the voter" by reviewing those selections in written English on the printed ballot itself before casting it. *See* Ark. Code Ann. § 7-5-504(6). While Shults agreed that the average voter cannot read or understand the corresponding bar codes on the ballot, the statute does not

contain language that the voter must be able to verify his or her selections in the specific format that is counted by the tabulator, and we will not add words to a statute to convey a meaning that is not there. *3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158 of Am. Legion, Dep't of Ark., Inc.*, 2018 Ark. 91, 548 S.W.3d 137. It is important that section 7-5-504, as well as all of subchapter 5, pertain solely to the requirements and specifications for voting machines, and that it defines "Voting machine" as "[o]ne (1) or more electronic devices that operate independently or as a combination of a ballot marking device and an electronic vote tabulating device." Ark. Code Ann. § 7-1-101(43)(B) (Supp. 2023). Thus, the voter-verification requirement in § 7-5-504 for the "voting machine" is accomplished because the statute is not specific as to which device or step in the process that the ballot review must occur, as long as the voter has the opportunity. We cannot ignore the definition the General Assembly provided. If we were to accept appellants' argument, these statutory provisions would be rendered ineffective, and we will not interpret statutory language in such a manner. *Ark. Dep't of Corr. v. Shults*, 2017 Ark. 300, 529 S.W.3d 628. Accordingly, the circuit court did not err in concluding that appellants were not entitled to declaratory and injunctive relief based on their claim that the voting equipment at issue fails to comply with Ark. Code Ann. § 7-5-504(6) and (7) and the corresponding provisions in the HAVA.

Appellants next contend that the circuit court abused its discretion when it denied their motion to recuse. They argue that there was a communication and an objective demonstration of bias in this case that caused the circuit court's impartiality to reasonably be questioned. Appellants specifically assert that the circuit court prejudged the issues,

10

commented on expert testimony, refused to accept evidence, laughed at their motion to recuse, and denied their right to a jury trial.

Arkansas Code of Judicial Conduct 2.11(A) states that a "judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." *See also* Canon 3E(1) (requiring judge to recuse from cases in which his or her impartiality might reasonably be questioned). There is a presumption that judges are impartial, and the party seeking disqualification bears the burden of proving otherwise. *Taffner v. Ark. Dep't of Human Servs.*, 2016 Ark. 231, 493 S.W.3d 319. A trial judge has a duty not to recuse himself from a case where no prejudice exists. *Id*. A judge's decision not to recuse himself is discretionary and will not be reversed on appeal absent an abuse of discretion. *Isom v. State*, 2018 Ark. 368, 563 S.W.3d 533 To decide whether there was an abuse of discretion, we review the record to see if any prejudice or bias was exhibited. *Id*.

Appellants have failed to demonstrate evidence of either actual bias or an appearance of bias sufficient to warrant the recusal of the circuit court judge in this case. Appellants primarily focus on the circuit court's refusal to allow them to present testimony from two expert witnesses regarding vulnerabilities in the software of the voting machines that could be exploited and potentially affect the accuracy of the bar codes on the ballot. The court excluded this testimony on the basis that it was irrelevant to the threshold issue before it but accepted appellants' proffer of evidence to that effect. Circuit courts have broad discretion on evidentiary issues, and the court's decision to exclude the experts' testimony here does not demonstrate that it was biased or had prejudged appellants' case. *Brown v. State*, 2012 Ark. 399, 424 S.W.3d 288. In fact, a review of the circuit court's rulings during the

11

September 11 hearing reveals that the court limited the presentation of evidence by both parties on the basis of relevance. Also, the mere fact of adverse rulings is not enough to demonstrate bias. *Taffner*, *supra*.

Appellants' contention that the circuit court's conduct in this case was similar to that in *Riverside Marine Manufacturers, Inc. v. Booth*, 93 Ark. App. 48, 216 S.W.3d 611 (2005), is not persuasive. In *Riverside*, the trial judge indicated during a pretrial hearing that Riverside was going to lose the case. The judge also stated before Riverside had even presented its defense at trial that "unless something happens, [Riverside is] going to have to pay. If you-all want to settle this beforehand, now is the time." *Id*. at 50, 216 S.W.3d at 613. The court of appeals held that the trial judge's comments conveyed an appearance that Riverside's liability had been predetermined and reversed and remanded with directions to transfer the case to another judge. *Id*. at 53, 216 S.W.3d at 615.

Here, the record contains no comments indicating that the circuit court appeared to be biased against appellants or had determined the merits of the case before hearing their evidence. Although appellants assert that the circuit court refused to allow them to introduce additional evidence into the record, the court repeatedly asked appellants what other relevant evidence they wanted to offer. However, appellants did not identify any additional evidence or testimony that they desired to introduce other than the testimony of the two expert witnesses discussed above. While appellants also claim that the circuit court laughed when they moved for its recusal, this reaction does not, by itself, show bias or prejudice sufficient to require recusal. Finally, their contention that the circuit court demonstrated bias by depriving them of their right to a jury trial is without merit for the reasons discussed

12

below. Accordingly, the circuit court did not abuse its discretion by denying the motion to recuse.

In their third and final point on appeal, appellants argue that the circuit court's denial of their motion for new trial was a reversible and serious error. They contend that a jury trial is afforded in cases involving a declaratory judgment and an illegal exaction and that the circuit court deprived them of this constitutional right by rendering a final decision at the conclusion of the September 11 hearing. While appellants agree that the court was authorized to consolidate and advance the trial on the merits with the hearing on the preliminary injunction pursuant to Ark. R. Civ. P. 65(a)(2), they assert that this rule still provides that the court "must preserve any party's rights to a jury trial." Ark. R. Civ. P. 65(a)(2) (2023). Because the court failed to do so, appellants claim that they were entitled to a new trial under Ark. R. Civ. P. 59 based on the following grounds: "any irregularity in the proceedings or any order of the court or abuse of discretion by which the party was prevented from having a fair trial"; or "[t]he verdict or decision is clearly contrary to the preponderance of the evidence or is contrary to the law[.]" Ark. R. Civ. P. 59(a)(1) & (6) (2023).

We generally review a circuit court's decision on a motion for new trial under Ark. R. Civ. P. 59 for a manifest abuse of discretion. *KW-DW Props., LLC v. Ark. State Highway Comm'n*, 2019 Ark. 95, 571 S.W.3d 6. However, we employ a de novo standard of review for claims relating to a right to a jury trial. *Bauer v. Beamon*, 2023 Ark. 194, 678 S.W.3d 782. Article 2, section 7 of the Arkansas Constitution provides that "[t]he right of trial by jury shall remain inviolate and shall extend to all cases at law, without regard to the amount

in controversy." We have held that the Arkansas Constitution does not ensure the right to a jury in all possible instances and that it extends only to those cases that were subject to trial by jury at the common law. *Bauer*, 2023 Ark. 194, 678 S.W.3d 782; *Williams v. Baptist Health*, 2020 Ark. 150, 598 S.W.3d 487. Because there was no right to a trial by jury at the common law in equitable proceedings, the constitutional right to a jury trial does not extend to cases in equity. *Bauer, supra*.

The amended complaint in this case sought a declaratory judgment and injunctive relief and alleged that the voting machines used in Arkansas elections did not comply with the statutory requirements in Ark. Code Ann. § 7-5-504(6) and (7) and the HAVA. The remaining causes of action for an illegal exaction, fraud, and violations of the ADTPA all depended on whether the declaratory-judgment claim was successful. As appellants concede, they were not entitled to a jury trial on their request for injunctive relief because this is an equitable remedy. *Williams, supra*. Further, a party has a right to a jury trial on a declaratory-judgment claim only when it "involves the determination of an issue of fact." *See* Ark. Code Ann. § 16-111-109 (Repl. 2016) (stating that "[w]hen a proceeding under this chapter involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending").

Appellants assert that factual questions remain to be resolved, such as whether a voter can verify his or her selections on the ballot-marking device before the ballot is printed and whether the "ballot" includes the selections in written English, the bar codes, or both. However, the testimony introduced at the hearing established that the voter has the

opportunity to review his or her selections on a summary screen on the ExpressVote ballot-marking machine before pushing the print button; that the printed card, which contains the voter's selections in both written English and corresponding barcodes, is the ballot; and that this ballot is then inserted into the DS200 tabulator machine, which reads the barcodes to tabulate the votes. Appellants did not dispute this testimony, nor did they attempt to introduce additional evidence to rebut it. The circuit court's interpretation and application of Ark. Code Ann. § 7-5-504 to these undisputed facts was a question of law, not one of fact, and appellants were therefore not entitled to a jury trial on this issue. *Calhoun*, *supra*; *Crawford v. Cashion*, 2010 Ark. 124, 361 S.W.3d 268 (per curiam). Because the circuit court concluded that appellants failed on their declaratory-judgment claim, their remaining causes of action also failed. Thus, appellants were not deprived of their right to a jury trial, and the circuit court did not err by denying their motion for new trial. We affirm the circuit court's dismissal of appellants' amended complaint.

Affirmed.

WOMACK, J., concurs without opinion.

WEBB, J., dissents.

*Lancaster Law Firm, PLLC*, by: *Clinton W. Lancaster*, for appellants.

*Tim Griffin*, Ark. Att'y Gen., by: *Jordan Broyles*, Sr. Ass't Att'y Gen.; and *Justin Brascher*, Ass't Att'y Gen., for appellees John Thurston in his official capacity as Secretary of State, and the State Board of Election Commissioners.

*Chris Madison*, Legal Counsel, State Board of Election Commissioners, for appellee State Board of Election Commissioners.

*Friday, Eldredge & Clark, LLP*, by: *Kevin A. Crass* and *Kathy McCarroll*, for separate appellee Election Systems and Software, LLC.